UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MOSAIC HEALTH, INC. and CENTRAL
VIRGINIA HEALTH SERVICES, INC.,
*individually and on behalf of all those*
*similarly situated,*

                    Plaintiffs,

          v.

SANOFI-AVENTIS U.S., LLC, ELI
LILLY AND COMPANY, LILLY USA,
LLC, NOVO NORDISK INC., and
ASTRAZENECA PHARMACEUTICALS
LP,

                    Defendants.

_____

**DECISION AND ORDER**

6:21-CV-06507 EAW CDH

**BACKGROUND**

In this putative class action, plaintiffs Mosaic Health, Inc. and Central Virginia Health Services, Inc. (collectively "Plaintiffs") allege that defendant pharmaceutical companies Sanofi-Aventis U.S., LLC, Eli Lilly and Company and Lilly USA, LLC, Novo Nordisk Inc., and AstraZeneca Pharmaceuticals LP (collectively "Defendants") have violated state and federal antitrust laws by "coordinating to retract a long-standing discount for safety-net hospitals and clinics." (Dkt. 93 at ¶ 1).

This case has been referred to the undersigned for all non-dispositive pretrial matters. (Dkt. 107). On June 25, 2026, consistent with the undersigned's individual

practices[1], the Court received a letter from Defendants regarding "a discovery dispute concerning outreach by Plaintiffs' counsel to Defendants' former employees." (Dkt. 168 at 1). Defendants attached to their letter a proposed protective order[2] requiring that any party intending to contact another party's former employee provide a "modest ten-day notice period." (*Id.* at 1, 7-9). Defendants noted Plaintiffs' opposition to this proposal and requested the Court's intervention. (*Id.* at 1). On July 1, 2026, Plaintiffs sent a responsive letter to the Court setting forth the basis for their opposition. (Dkt. 169).[3]

The Court scheduled a hearing for July 9, 2026, at which it heard oral argument on this dispute. (Dkt. 151; Dkt. 156; Dkt. 160). The Court afforded the parties an opportunity to file further written submissions on the matter, but the parties agreed that no such additional submissions were required. (Dkt. 156; *see also* Dkt. 160 at 40-42). The Court accordingly took the matter under advisement. (Dkt. 156).

---

[1]    *See* United States District Court, Western District of New York, Judges' Info, Magistrate Judges, Hon. Colleen D. Holland, Discovery Disputes, https://www.nywd.uscourts.gov/content/hon-colleen-d-holland (last accessed August 11, 2026).

[2]    Defendants captioned this document as a proposed "case management protocol," but agreed at the hearing held on July 9, 2026, that it would function as a protective order. (Dkt. 160 at 8-9).

[3]    For purposes of the record, the Court has filed copies of the parties' letters on the docket in this case contemporaneously with the filing of the instant Decision and Order.

Having carefully considered the parties' respective positions, and for the reasons below, the Court denies Defendants' request for a protective order requiring ten days' advance notice before engaging in communications with an opponent's former employees.

## DISCUSSION

### I.   Legal Standard

A federal court has "'broad discretion to manage' or otherwise limit discovery based on the circumstances." *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d. Cir. 2003)). Consistent with such authority, Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1).

"The burden of showing good cause for the issuance of a protective order falls on the party seeking the order." *Ampong v. Costco Wholesale Corp.*, 550 F. Supp. 3d 136, 139 (S.D.N.Y. 2021). "To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354, 356 (D. Conn. 2006) (citations and quotation omitted).

### II.   The Court's Authority to Issue the Requested Protective Order

As a threshold matter, Plaintiffs have argued that the Court lacks the authority to issue the protective order requested by Defendants. (*See* Dkt. 160 at 9).

Plaintiffs' argument rests on the New York Rules of Professional Conduct and this District's Local Rules of Civil Procedure—specifically, Local Rule 83.3(a), which provides that "[a]ttorneys practicing in this Court shall faithfully adhere to the New York Rules of Professional Conduct" and that "[i]n interpreting the New York Rules of Professional Conduct, absent binding authority from the United States Supreme Court or the United States Court of Appeals for the Second Circuit or significant federal interests, this Court . . . will give due regard to decisions of the New York Court of Appeals and other New York State courts." W.D.N.Y. Loc. R. Civ. P 83.3(a).

Plaintiffs argue that, via Local Rule 83.3(a), the New York Court of Appeals' decisions in *Muriel Siebert & Co. v. Intuit Inc.*, 8 N.Y.3d 506 (2007), and its progeny (including *Arons v. Jutkowtiz*, 9 N.Y.3d 393 (2007)) are "controlling" and foreclose the possibility of the Court imposing the restrictions requested by Defendants. (Dkt. 169 at 2; Dkt. 160 at 9-10). Defendants disagree and argue that while the New York Rules of Professional Conduct govern the conduct of the attorneys in this case, the Court's ability to impose discovery restrictions is defined by the Federal Rules of Civil Procedure and federal common law. (*See* Dkt. 160 at 16).

The Court agrees with Defendants that *Muriel Siebert* and its progeny do not define the scope of the Court's authority. The relevant line of New York cases addresses two related but distinct questions: first, what ethical restrictions apply when a party conducts an ex parte interview with an opponent's former employee; and second, what additional restrictions a court may impose on such interviews.[4]

---

[4]     For example, in *Arons*, the New York Court of Appeals considered the impact

As to the former question, Plaintiffs are correct that under Local Rule 83.3(a), the New York Rules of Professional Conduct apply and the interpretations thereof set forth in *Muriel Siebert* and its progeny need to be given due regard. If, for example, Defendants were seeking sanctions or disqualification based on Plaintiffs' counsel having conducted an ex parte interview with one of Defendants' former employees, *Muriel Siebert* would be relevant. *See, e.g., Bacote v. Riverbay Corp.*, No. 16CIV1599GHWAJP, 2017 WL 945103, at \*8 (S.D.N.Y. Mar. 10, 2017) (applying *Muriel Siebert* in denying motion to disqualify counsel).

But that is not the procedural posture before the Court. As Defendants emphasized at oral argument (*see* Dkt. 160 at 17), they are seeking not retrospective sanctions, but instead prospective procedural limitations. Local Rule 83.3(a) and the New York Rules of Professional Conduct do not provide the rule of decision as to whether this Court can impose discovery restrictions that go beyond those required by the ethical rules. The Rules of Professional Conduct set the floor for the conduct of attorneys. They do not impose a ceiling on a federal court's ability to manage the discovery process and to impose appropriate limitations in accordance with Rule 26(c).

Indeed, post-*Muriel Siebert*, multiple courts in this Circuit have acknowledged that "a protective order [governing ex parte communications with an opponent's former employees] may issue where there exists a real risk that the former employees

---

of Article 31 of the New York Civil Practice Laws and Rules on ex parte discussions with non-parties, including former employees. *See* 9 N.Y.3d at 409.

unintentionally would disclose privileged information or communications." *Judd v. Take-Two Interactive Software, Inc.*, No. 07 CIV. 7932 (GEL), 2008 WL 906076, at *1 (S.D.N.Y. Apr. 3, 2008); *see also Walker v. United States*, No. 18CV2829ARRCLP, 2021 WL 4988151, at *4 (E.D.N.Y. Aug. 10, 2021); *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 416 (S.D.N.Y. 2011); *In re SLM Corp. Sec. Litig.*, No. 08 CIV. 1029 (WHP)*, 2011 WL 611854, at *2 (S.D.N.Y. Feb. 15, 2011). This Court agrees, and rejects Plaintiffs' threshold contention that it lacks the authority, in an appropriate case, to impose restrictions on ex parte communications with an opposing party's former employees.

III.   **Lack of Good Cause for the Requested Protective Order**

Of course, that the Court has the authority to issue the requested protective order does not necessarily mean that it ought to exercise that authority. *See G-I Holdings, Inc. v. Baron & Budd*, 199 F.R.D. 529, 534 (S.D.N.Y. 2001) ("To say that a protective order may issue, however, does not mean that it always should. Nor does it answer the question of the appropriate nature and scope of such an order.").

Consistent with the applicable legal standard, the Court must separately assess whether there is good cause for entry of the requested protective order. In the context of ex parte communications with an opposing party's former employees, courts have stated that the primary concern is the "risk that the former employees unintentionally would disclose privileged information or communications." *Judd*, 2008 WL 906076, at *1; *see also Walker v. United States*, 2021 WL 4988151, at *3

(explaining that the potential that there were privileged communications involving the former employees "alone is insufficient to satisfy [the moving party's] burden").

The Court must take care to respect the "time-honored and decision-honored principles . . . that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private[.]" *Int'l Bus. Machines Corp. v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975). As such, "a general fear that privileged information could be unwittingly divulged during an *ex parte* interview" will not satisfy the moving party's burden. *In re SLM Corp.*, 2011 WL 611854, at *2.

Instead, the "party seeking a protective order in this situation has the burden of establishing the essential elements of the privilege." *Judd*, 2008 WL 906076, at *2. This may require the moving party to "identify the individuals who may have had access to privileged information, or describe the nature or extent of their exposure[.]" *Id*. "However, generalized assertions that a former employee may have had exposure to privileged information are insufficient to allow the Court to craft a meaningful protective order." *Id*.; *see also In re SLM Corp.*, 2011 WL 611854, at *2 ("Sallie Mae articulates a general fear that privileged information could be unwittingly divulged during an *ex parte* interview. Without more, the Court cannot craft a meaningful protective order and is not willing to further infringe on Plaintiffs' 'time-honored' right to conduct *ex parte* interviews of witnesses.").

Here, Defendants, as the moving party, have failed to satisfy their burden of demonstrating a particularized risk that former employees will inadvertently disclose privileged information if interviewed by Plaintiffs' counsel. Plaintiffs' counsel have

confirmed their awareness of the relevant ethical rules and confirmed that they will abide by those rules in conducting any interviews with former employees. (Dkt. 169 at 2). The Court has no reason to doubt counsel's representations in this regard. *See Judd*, 2008 WL 906076, at *2 ("Here, there is no suggestion that the plaintiff's attorneys would not conduct any potential interviews themselves, and, the Court must assume, until demonstrated otherwise, that all attorneys before this Court will behave properly as officers of the Court."); *cf. GI-Holdings*, 199 F.R.D. at 535 (granting request for protective order where the prospective "investigators [were] themselves lay persons and, thus . . . in little better position than the interviewees to assess whether privileged material [was] being disclosed").

It is thus not the case that, absent the requested protective order, Plaintiffs' counsel will be allowed to engage in "unfettered outreach to former employees" of Defendants. (Dkt. 168 at 3). Plaintiffs' counsel will be constrained by their ethical obligations. As such:

> In conducting any ex parte interviews, the Court expects that [Plaintiffs'] attorneys would advise any interviewee of the attorneys' representation and interest in the ongoing litigation, and would direct the former employee to avoid disclosing privileged or confidential information, not to answer any questions that would lead to the disclosure of such information, and would ensure that the interviewee understands those admonitions before conducting the interview.

*Judd*, 2008 WL 906076, at *2; *see also Arista Recs.*, 784 F. Supp. 2d at 417 (instructing counsel not to request privileged information from opposing party's former employee and "to stop [the former employee] from revealing privileged information, if Plaintiffs become aware that he is doing so"); *Muriel Siebert*, 8 N.Y.3d at 512 (explaining that

"the right to conduct ex parte interviews" is not "a license for adversary counsel to elicit privileged or confidential information from an opponent's former employee" and that "[c]ounsel must still conform to all applicable ethical standards when conducting such interviews").

Defendants have not identified specific employees (or even classes of employees) who have been exposed to extensive amounts of privileged information, but seek a blanket order that would apply to every one of their former employees. Defendants note that they are involved in many different lawsuits, some of which have overlapping subject matters with this case, and argue generally that "[m]any of Defendants' former employees had direct, repeated exposure to privileged work-product and attorney-client communications concerning . . . topics at issue in Plaintiffs' discovery requests[.]" (Dkt. 168 at 2-3). A similar argument could be made in virtually any litigation involving a large employer in a highly regulated industry, yet courts have not found such generalized concerns sufficient to justify entry of a protective order in this context. Defendants' generalized concerns regarding potential exposure to privileged information do not satisfy their burden in this context.

Defendants' assertion that Plaintiffs' discovery demands address "a wide swath of . . . topics that will undoubtedly sweep in a significant amount of privileged information" (*id.* at 2) does not change the analysis. As Plaintiffs have set forth in their letter to the Court, one of the requests identified by Defendants is by its own terms limited to "non-privileged" materials. (Dkt. 169 at 4; *see* Dkt. 168 at 16). The other requests to which Defendants point seek communications with Congress and

other governmental entities, which are definitionally not within the scope of the attorney-client privilege, and information about antitrust compliance training, which is an unremarkable request in the context of this litigation. (*See* Dkt. 168 at 14-16). These discovery demands are insufficient to demonstrate a real, particularized risk that Defendants' former employees would inadvertently reveal privileged information during an ex parte interview by Plaintiffs' counsel.

Defendants also argue that the protective order they seek is different in kind from the protective orders that other courts have declined to issue, because they do not seek (at this stage of the proceedings) to prohibit Plaintiffs' counsel from engaging in ex parte communications with their former employees, but only to impose a ten-day notice period before such communications occur. (*See* Dkt. 160 at 28-29). They contend that without such a notice period, they will be "left to guess which former employees Plaintiffs may contact and to determine preemptively whether each such individual may have been exposed to privileged information" and that this "is not realistic." (Dkt. 168 at 4).

This argument is not persuasive. It overlooks the fact that Defendants, as the former employers of the individuals at issue, are well positioned in the first instance to identify those who had extensive exposure to privileged information and are at a particular risk (because of lack of sophistication or other specific factors) of inadvertently disclosing such information during an ex parte interview. Defendants are free to take appropriate measures to address their concerns directly with those individuals. *See In re SLM Corp.*, 2011 WL 611854, at *2 ("Of course, Sallie Mae

knows which of its former employees are likely to have privileged information relevant to this case and can take appropriate prophylactic measures[.]"). There is also nothing preventing Defendants from seeking a narrowly tailored protective order aimed at such individuals.

Moreover, courts in this Circuit have acknowledged that where "a party demands a list of persons whom opposing counsel has interviewed," it "implicates core policies behind the work product doctrine," because such a request "is essentially seeking . . . a roadmap of an adversary's pretrial investigation[.]" *Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 343 n.8 (S.D.N.Y. 2011) (citing *In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30, 35 (S.D.N.Y. 2003)); *see also US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2013 WL 5495542, at *9 (S.D.N.Y. Oct. 3, 2013) ("[C]ourts in this district have noted that the identities of people interviewed as part of counsel's investigation into the facts of the case have the potential to reveal counsel's opinions, thought processes, or strategies, and are therefore protected."); *In re SLM Corp.*, 2011 WL 611854, at *1 (S.D.N.Y. Feb. 15, 2011) ("the identities of interviewed witnesses are protected work product and therefore witness names need not be disclosed"). Requiring Plaintiffs' counsel to reveal in advance which of Defendants' former employees it intends to interview would unduly impede Plaintiffs' ability to develop their case and to protect their counsel's thought processes and strategies from Defendants.

The Court acknowledges that in *Lyondell-Citgo Ref., LP v. Petroleos de Venezuela, S.A.*, No. 02 CIV. 0795 (CBM), 2003 WL 22990099 (S.D.N.Y. Dec. 19, 2003), the Court imposed a protocol requiring ten business days' notice "by a party of any proposed contact with respect to this litigation with any former employee of an opposing party, its subsidiaries or predecessors." *Id*. at *1. However, the *Lyondell-Citgo* court did not explain how it determined that such a protocol was warranted under Rule 26(c), and its decision thus is not persuasive on this point. And other courts have declined to enter "a protective order or any other relief" when the moving party relied only on generalized arguments regarding exposure to privileged information. *See Judd*, 2008 WL 906076, at *2.

In sum, the Court finds the arguments and information presented by Defendants insufficient to justify interfering with Plaintiffs' "time-honored" right to conduct ex parte interviews of potential witnesses, including Defendants' former employees. The Court therefore denies Defendants' request for a protective order.

## IV.    Contact Information for Former Employees with Relevant Information

The parties have requested the Court's intervention with respect to a further, related issue. Plaintiffs state that "[i]n their initial disclosures, Defendants asserted that all former employees could be contacted only through counsel. Defendants have thus far refused to provide home contact information for individuals listed on their initial disclosures and in interrogatory responses." (Dkt. 169 at 3). At oral argument,

the parties agreed that this issue was appropriately resolved by the Court at this time. (Dkt. 160 at 43-44).[5]

> In a federal civil matter, a party must produce:
>
> [T]he name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Fed. R. Civ. P. 26(a)(1)(A)(i). As the court in *Judd* explained:

> [A] [d]efendant may . . . offer to provide its former employees with counsel. However, defendant has no right to refuse to identify former employees who may have discoverable information, and no independent right to have its counsel present at those interviews. . . . If the defendant knows that a former employee has retained counsel, then defendant may provide plaintiff with the contact information for that counsel. Otherwise, defendant must provide plaintiff with the last known addresses of those former employees who have discoverable information.

*Judd*, 2008 WL 906076, at *3; *see also New York v. Grand River Enters. Six Nations, Ltd.*, No. 14-CV-910A(F), 2020 WL 7350335, at *4 (W.D.N.Y. Dec. 15, 2020) ("It is generally recognized that providing counsel's address in lieu of that of the disclosed witness does not comply with Rule 26(a)(1) which requires the home addresses and telephone numbers of disclosed witnesses who are employees of the disclosing party.").

---

[5] Defense counsel noted that Defendants may have relevancy objections that they wish to pursue with respect to certain former employees. As the Court acknowledged (*see* Dkt. 160 at 44), relevance is always an issue that may be raised during discovery, *see also* Fed. R. Civ. P. 26(b)(1). Disputes regarding relevancy may be separately brought to the Court's attention for resolution.

Having determined that entry of a protective order with respect to Defendants' former employees is not warranted at this time, the Court agrees with Plaintiffs that Defendants must provide contact information (to the extent it is known to Defendants) for former employees within the scope of Rule 26(a)(1). Defendants are directed to provide such information to Plaintiffs within ten business days of entry of this Decision and Order.

## CONCLUSION

For the foregoing reasons, Defendants' request for entry of a protective order requiring ten days' advance notice before engaging in communications with an opponent's former employees is denied. This decision is without prejudice to Defendants' ability to seek a more narrowly tailored protective order addressed to particularly identified individuals.

Defendants are directed to provide contact information for former employees who fall within the scope of Rule 26(a)(1), to the extent it is known, within ten business days of entry of this Decision and Order.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: August 12, 2026
      Rochester, New York